THE PEOPLE *ex rel.* E. G. Oelricks *v.* THE SUPERIOR COURT of the City of New York. In S. Ct. 5 Wend. 114—128.

This was a motion for a mandamus to the judges of the Superior Court of the city of New York, to *vacate* a rule granting a new trial in an action brought in that court in favor of E. G. Oelricks against the Phœnix Bank. The plaintiff sought to recover the amount of a draft for $2500, deposited with the bank for collection, on the ground of neglect in transmitting the bill to Baltimore, on which place it was drawn. The main question of fact in the case was,

whether the note was left with the bank *before twelve o'clock or after* on Saturday, 30th of May, 1839. Under a charge from the presiding judge "that if they believed the bill had been left *before twelve o'clock*, so that it would be regularly transmitted by the mail, *that day*, according to the rule and usage of the bank, they ought to find for the plaintiff, otherwise for the defendants; the jury found for the plaintiff.

The defendants moved for a new trial, on the ground of *newly discovered evidence ;* viz: that of a clerk in the bank at the time, one Russell, who made affidavit that he saw the note deposited, and that it was about *one* o'clock in the day, or rather past. They also produced affidavits of the president and cashier of the bank that until after the trial of the cause, they did not know that the deponent Russell knew at *what time* the bill was left at the bank; nor that he knew any fact or circumstance which was in any way important to the defendants in their defence, and that they verily believed the other officers of the bank were equally uninformed until after the trial. The Superior Court upon these affidavits of newly discovered evidence, granted a new trial. To vacate that rule the plaintiff applied for this mandamus.

The points made on the argument were : 1. Whether the defendants had used due diligence in ascertaining whether *Russell* was a material witness, and if so, in obtaining his testimony ? 2. Whether as the evidence was merely *cumulative*, as to facts and circumstances relating to the same matters controverted on the trial, and therefore tending to impeach the evidence of the plaintiff given on the trial, the Superior Court ought to have granted a new trial in the cause ? 3. Whether, if that court erred in granting a new trial, as that was a matter resting purely *in the discretion of that court*, it was competent for the Supreme Court to control that discretion, or to direct the exercise of it in the inferior tribunal.

Sutherland, J., delivered the opinion of the Supreme Court. The court held that the plaintiffs were guilty of great negligence in not procuring the "newly discovered evidence, and also that it was merely cumulative evidence in the strictest sense of the term; and that upon either ground, if it had

been an application in that court, the motion for a new trial would have been refused," p. 122.

Mr. Justice Sutherland then proceeds:

"But it is contended, that admitting the court below to have erred, in *granting a new trial*, still it is a matter of discretion, not depending upon any fixed and established rules of law; and it is not competent for this court to interfere with or control inferior jurisdictions in this department of their functions."

This principle the learned judge recognizes; and he admits that "*a mandamus* is proper only where some *legal right* has been *refused or violated, and there is no other appropriate legal remedy*." (See cases cited, p. 122.) What is meant by the court when they speak of '*the discretion of inferior tribunals*,' and say that they will not interfere with or attempt to coerce it, will be best ascertained by adverting to some of the cases in which that language has been used."

He then examines the case of *The People ex rel. Wilson* v. *The Supervisors of Albany*, 12 J. R. 414; *Giles's Case*, 2 Strange, 881; Salk. 45; 1 Burr. 556, which were cases where a mandamus had been refused. Also, *Ex parte Bacon & Lyon*, 6 Cowen, 392. *Ex parte Benson*, 7 Cow. 363. *Ex parte Bailey*, 2 Cow. 479. The judge then proceeds:

"These cases sufficiently indicate the nature of the *discretion*, the exercise of which by inferior tribunals or officers this court will not undertake to regulate or coerce. It is that discretion *which is not, and cannot be governed by any fixed principles or rules*. We will not set up our judgment in opposition to the judgment of a board of supervisors, as to what is a reasonable compensation for services performed by a constable for the public, no sum having been fixed by law. But if they refuse to allow *any thing* either on the ground that they have *no discretion* upon the subject, or that the officer has *no right* to compensation, then we will interfere and determine whether they have the power to make an allowance, or whether the officer is entitled to be paid. The powers of the supervisors and the rights of the officer are questions of law. They are legal powers and rights, if they exist at all. *Bright* v. *Supervisors of Chenango*, 18 J. R. 242; 19 J. R. 260. If an inferior court should deny to a party the benefit of an established general rule of practice, not depending at all upon circumstances, I apprehend we should interfere. For instance, if it was a rule of such court that the first de-

42

fault should in all cases, as a matter of course, be opened upon the payment of the taxable costs, and they should, in a given case, refuse to open such default, we should not only have the right, but should be bound to compel them to do it by mandamus. These observations are equally applicable to motions for new trials founded on newly discovered evidence. It has been shown, that there are certain principles in relation to such applications, which are clearly settled and well defined by long continued practice and an uninterrupted series of decisions in our own and other courts. Those principles are, 1. That a party is bound and presumed to know the general leading points which will be litigated in his case. 2. That if he omit ordinary diligence to procure evidence in relation to those points, upon the first trial, his motion for a new trial for the purpose of introducing such testimony shall be denied. 3. That if it consist merely of additional facts and circumstances going to establish the *same points*, which were principally controverted before, or of additional witnesses to the same facts and circumstances, such evidence is cumulative and a new trial shall not be granted."

"In cases to which these principles clearly and unquestionably apply, the granting or refusal of a new trial is not a matter of discretion. The parties have a legal right to a decision conformable to those principles. Where there is a *doubt* upon the point of *negligence*, or as to the *character of the evidence*, or as to its materiality, it becomes a matter of discretion, and the court will not, perhaps I ought to say can not, rightfully interfere."

"But no such doubts exist in this case. It appears to us that the defendants were guilty of gross negligence in not procuring the testimony of Russell upon the former trial, and also that his evidence, as disclosed in the affidavits, is clearly and exclusively cumulative. We think it therefore a proper case for a mandamus."

"The jurisdiction of this court by mandamus, is one of immense importance and extent. It belongs to this court alone. It extends to all inferior courts and tribunals, and officers, executive, ministerial or judicial, within the state. It operates summarily, and in some cases definitively, upon most important interests. In view of these considerations, we have taken this occasion to explain, somewhat at large, some of the leading principles which define the extent and regulate the exercise of this power, so far as they seemed to be applicable to the case before us."

The decision in the foregoing case was received with no little surprise and some disapprobation, by the bar generally, at least

in the city of New York. The justices of the Superior Court, partaking, no doubt, of the surprise, as well as the disapprobation, did not proceed to *vacate their order granting the new trial ;* but made their return of all the facts and circumstances of the case; setting forth the affidavits on which the motion for a new trial was made, and also the affidavits read in opposition. The case as presented by the return did not differ from that made by the papers on the motion for an alternative mandamus. The return of the justices of the Superior Court to that writ, concluded by stating " that the rule ordering a new trial was granted upon good and sufficient cause, according to the judgment of the court, and in the exercise of the discretion vested in it; and that therefore they had not vacated it." To this return the relator demurred. After argument,

The opinion of the Supreme Court was delivered by Savage, Ch. J.

" The facts are not varied from what they were when the alternative mandamus was granted. The points presented are the same formerly discussed. I shall accordingly consider as settled principles : 1. That a writ of mandamus lies where a party has a legal right, and no other appropriate remedy. 2. That it does not lie to an inferior tribunal, where such tribunal has the right of exercising its discretion. 3. That the discretion which this court can not control, is one governed by *no fixed legal principles.* 4. That in *all cases* where an inferior court is bound to proceed according to established legal principles, and it is alleged that an *error* has been committed, this court has power to issue a mandamus, and if the error has intervened, the same obligation exists to issue the writ, as to affirm or reverse a judgment upon a return to a writ of error."

Proceeding upon these principles as settled, the Chief Justice comes to the conclusion that the Superior Court had not the *legal discretion* to grant a new trial. He says :

" Upon the whole case, therefore, I am satisfied that the discretion to be exercised by an inferior court in granting new trials for newly discovered testimony, is not an *arbitrary* but a *legal* discretion, and is therefore subject to review by this court; that the defendants in the courts below had been

guilty of laches, in not procuring the testimony of Russell upon the trial; and further that his testimony is merely cumulative; and that for these reasons a peremptory mandamus should be granted."

Judgment accordingly.

---

Looking at these reasons and at the peculiar vagueness of the question of the laches of the defendants in regard to procuring the attendance of their witness at the trial, it is not easy to imagine an application for a new trial, which would more clearly belong to the class in which the learned Chief Justice admits that a mandamus does not lie to an inferior tribunal. "3. That the *discretion* which this court can not control, is one governed by no *fixed legal principles.*" What can be less governed by fixed legal principles than the question of laches? What in fact, after all, is more properly a question for the *discretion* of the court trying a cause, than the expediency of admitting cumulative evidence? The question here was not essentially different. Very extraordinary circumstances might even justify the granting a new trial, upon newly discovered cumulative evidence alone. Whether this was such a case, we do not mean to discuss; but suppose that the court had been dissatisfied with the verdict as against the weight of the evidence given to the jury, and without any *newly discovered cumulative* evidence, had ordered a new trial,—has the Supreme Court jurisdiction to vacate the order by mandamus? It had never claimed it. The court below had a power and a *discretion* as ample as the Supreme Court itself, in granting new trials. It is very true, that to grant a new trial where the facts have been fully passed upon by the jury upon all the evidence submitted to them; to subject the party who has gained a verdict to a new ordeal, and to the risk of having to encounter manufactured testimony on a new trial, would be a great abuse; a monstrous perversion of justice; and in a case of great hardship, the temptation to redress the injury by the summary and beneficial process of a mandamus, would be almost irresistible to a Supreme Court, loving justice, and abhorring the law's delay. But, on the other hand, is this possible abuse of the discretion of the subordinate tri-

bunals half so formidable, as those which would inevitably follow in the train of an indiscriminate review of all such applications to the courts below for new trials? If the Supreme Court have the power by mandamus, to vacate the granting of new trials, they ought *a fortiori*, to exercise the same power of issuing it to compel the courts below to grant them where it.is refused, either on grounds of law or fact. In other words, every case where a new trial was granted or refused, would become a case for review by mandamus. This would be most assuredly something more than "a gradual departure from the old law on this subject," as it is styled by Mr. Justice Bronson. It would be to supersede the whole power and discretion of those inferior courts in granting new trials. It would be constituting the Supreme Court a *standing jury*, to review all issues of fact as well as of law, presented to those tribunals. We have no idea that the able and learned judges of that court ever contemplated bringing about such a result; or intended to enlarge their jurisdiction by mandamus beyond what they conceived to be its legitimate boundaries. But we shall see that they were soon called upon; pressed upon all sides to "follow out the principle" of this case, of the *Judges of the New York Superior Court*, and to apply the writ of mandamus to cases to which no lawyer was ever bold enough before, to attempt its extension. Some of these applications, it is true, were refused; but others were successful.

In the case of *Ex parte Livingston* v. *The Judges of the New York Superior Court*, 10 Wend. 545, an attempt was made by mandamus, by a defendant to have satisfaction entered of a judgment, on the ground that the plaintiff, suing on a *replevin bond*, had not *assigned breaches in his declaration !*" The plaintiff obtained a verdict and had *nominal damages assessed*, on which he entered up judgment for the *debt*, 6 cents damages and the costs of increase. The defendant paid the *nominal damages* and costs of increase but no part of the debt, and applied to the court below for an order that satisfaction be entered; which being refused, a mandamus was asked for from the Supreme Court. The court, Nelson, J., denied the motion with costs. He says:

"We will not determine the effect of the judgment, upon motion, but leave the relator to his writ of error."

In the case of *The People ex rel. Fleming* v. *Niagara C. P.*, 12 Wend. 246, where that court had set aside a report of referees on the merits, on the ground that they had excluded proper evidence, the court, Sutherland, J., held that the referees were right, and the Common Pleas had erred in setting aside their report; and he granted a peremptory mandamus directing that court to vacate their order, setting aside the report of referees. No question was raised as to the jurisdiction by mandamus.

In the case of the *People ex rel. Manning* v. *New York C. P.*, a motion was made for an alternative mandamus to compel the Common Pleas to set off the judgment in that court against one obtained by the adverse party in the Supreme Court. The court granted the alternative mandamus. The question of jurisdiction was not raised.

In the case of *The People ex rel. Fisher* v. *The N. Y. Common Pleas*, 18 Wend. 534, a motion was made for a peremptory mandamus on the coming in of the return to the alternative writ. That required the Common Pleas to vacate so much of an order as gave the plaintiff below leave to *amend his declaration ; or* so much thereof as refused the defendant leave to plead it as amended, or show cause, &c.

By the court, Bronson, J. :

"In the case before the court, if the cause of action had in fact accrued before the declaration was filed, the plaintiff should have amended instead of joining in demurrer. If he did not discover his error until the argument, the court should have given judgment against him, but permitted him to amend on the usual terms."

"But the alternative writ was not awarded for the purpose of reviewing the judgment of the C. P. on the demurrer. The mode of coming at that question, is by a writ of error. Neither was the writ ordered on the ground that the court below improperly refused the defendants leave to withdraw the demurrer and plead. But the court went further and allowed the plaintiff leave to amend, and refused the defendants leave to plead to the amended declaration. To say nothing of the unusual course of permitting the *plaintiff to amend* where the judgment on demurrer was in his favor, I can perceive no possi-

ble ground upon which the defendants could justly be denied the right of *answering the amended declaration.* If the demurrer was frivolous, all the plaintiff had a right to ask, was that it should be overruled, and that the defendants should not be allowed to withdraw it and plead. Beyond this, the defendants had rights. They could bring error, and review the judgment of the C. P. Of this right, and of every means of defence, they have been entirely deprived by the order allowing the plaintiff to amend, without permitting them to answer."

The motion for the peremptory mandamus, was granted *with costs.*) See 10 Wend. 598.) The court saying:

" That the judges may always protect themselves against costs by obeying the alternative mandamus. Where they omit to do so, and make a return, it may be presumed that they are indemnified against costs by the party in interest.

To this decision, and the principle to be deduced from it, although Mr. Justice Bronson has rather described it by negatives than defined it positively, it is believed that no just objection can be maintained. The case seems to belong to that class in which the inferior court has deprived the party seeking the mandamus, of the *common right of being heard.* It is as much an infringement of that right, as the refusal of a Court of Common Pleas to *receive an appeal* from a justice of the peace, in a case where the statute has given the right to the party appealing ; and although in one such case, where the Common Pleas refused to receive the appeal, (*The People, ex rel. Doughty* v. *Dutchess C. P.,* 20 Wend. 658,) Mr. Justice Bronson, subsequent to the decision of the Court of Errors in this case of *The People* v. *The Oneida Judges,* did decline to interfere by mandamus, though he held the appeal wrongfully dismissed ; yet we have the fullest confidence to show by unquestioned authorities, in England and in our own state, that, in such a case, it was the right and duty of the court to have issued the writ of mandamus. But we postpone the examination of that point until we come to consider the case itself, of the *Judges of the Dutchess C. P.* in its order.

The next case that occurs of a mandamus to a Court of Common Pleas, is the very questionable one of *The People, ex rel. Roe* v. *The Suffolk C. P.*, 18 Wend. 550. This was a motion for a peremptory mandamus to the Common Pleas, commanding them " to *quash* a certiorari to a justice, and to set aside all subsequent proceedings thereon ;" the C. P. having denied the motion to that effect. The ground of the motion was, that the justice after a trial before him and a verdict for the plaintiff, had at the request of the counsel for the defendant, and in *his absence*, prepared the affidavit and other papers necessary for suing out the *certiorari*. The report of the case in the statement of facts is as follows :

" The affidavit on which the certiorari was allowed states the process for the commencement of the suit, the issue joined, the proceedings, verdict, and judgment. It does not state that any question arose about the admission or rejection of evidence, *the regularity of the proceedings*, or the legal rights of the parties ; and it concludes without alleging any ground of error, either in the proceedings, verdict, or judgment."[*]

At the special term at Albany in April 1836, the motion was denied by

Bronson, J., who held " 1. that the conduct of the justice was improper in drawing the affidavit ; 2. that if the party intended to rely, as he probably did, on the ground that the evidence did not warrant the verdict, it should have been stated in the affidavit ; that therefore the C. P. should have quashed the certiorari," and accordingly a peremptory mandamus was awarded.

We have called this a " very questionable case ;" and so we respectfully insist, it is well entitled to be called : first, upon principle, with regard *to the writ of mandamus being* the appropriate remedy, and secondly, as to the sufficiency of the affidavit. Whether the improper conduct of the justice in regard to the affidavit was not sufficient to warrant

---

[*] It is somewhat singular that Mr. Justice Bronson, entertaining the views he did, did not administer a sharp reproof in this case, to the judge or commissioner who *allowed the certiorari* upon such an affidavit.

the setting aside his return, when made, we are not prepared to deny. In *Fox* v. *Johnson*, 3 Cow. 20, the court, it is true, did set aside the *return* of a justice because it was prepared by the attorney for the plaintiff in error; it may be as Mr. Justice Bronson says—citing the case,—" no less objectionable to allow the justice to prepare papers which should be prepared by the attorney ;" but it is not so clear that such a defect should be a sufficient cause for quashing the certiorari, if the affidavit were otherwise sufficient in substance. The affidavit is more for the purpose of satisfying the judge or commissioner who allows the certiorari, that there is reasonable ground to believe there is error, than for the foundation of any subsequent *judicial action*. It is the justice's duty when the writ is granted upon ever so defective or erroneous a statement of his proceedings, to make his return to the writ. It is a mere ministerial duty : and it seems really going great lengths to say that a justice is *ex officio* to be supposed incapable of drawing a true *preliminary* affidavit of the proceedings before him for a party to verify. That he may thereby incur " *suspicion* of his fairness and integrity," by the party who wishes to prevent a certiorari being brought, seems to Mr. Justice Bronson ample reason for quashing the writ without looking into the return ! We can only oppose to so novel and unsupported a proposition—a triple " *negatur ! negatur ! ! negatur ! ! !*"

As to the other ground for quashing this certiorari; that the affidavit did not sufficiently set forth " the grounds upon which the allegation of error was founded," Mr. Justice Bronson seems to us to have arrived at a conclusion not only opposite to that which the court adopted in the case of *The People, ex rel. Mapes* v. *Columbia C. P.*, 6 Wend. 544, but directly opposite to his own admissions in this very case. In the case in 6 Wendell, (and it is cited by Mr. Justice Bronson in this case,) the court, Savage, Ch. J., held *in totidem verbis*, " that a statement of the points relied on for error, besides setting forth the testimony and proceedings before the justice, is not necessary, when the alleged errors consist in the proceedings set forth." In that case, the C. P. had quashed the certiorari, because the affidavit setting

43

forth the testimony and proceedings, did not also " set forth the grounds upon which the allegation of error was founded." And Ch. J. Savage unhesitatingly awarded a mandamus to the Common Pleas, to vacate their order quashing the certiorari. Now it appears that the affidavit in this case of the Suffolk Common Pleas, set forth the "*proceedings*, verdict, and judgment :" And Mr. Justice Bronson himself admits that he found enough in it to infer that " the party *probably* intended to rely on the argument, that the evidence did not warrant the verdict." Now, if so good a ground of error appeared, *probably* only, this decision of Mr. Justice Bronson granting the mandamus, seems to be not only one of those " gradual departures from the old law on this subject" —but equally a departure from some new and very good law on the subject also.

For, though we see no ground of objection to the remedy by mandamus in the case of the *Columbia C. P.,* where they had *quashed* a certiorari for the defects objected to the affidavit; it by no means follows that either, by the old or the new law, a mandamus was equally an appropriate remedy where the Common Pleas had *refused* to quash a certiorari for that defect—admitting that it really existed. The Columbia Common Pleas had refused to *receive an appeal;* for such the quashing of the certiorari, in effect, was; and the Supreme Court, as we believe, exercised no new, no usurped jurisdiction in looking into their proceedings to see why they denied the party the benefit of his certiorari. But when the Suffolk Common Pleas had *refused to quash* the certiorari, what was the condition of the parties, and of that court itself? Instead of denying either party justice, or the right of being heard, they in effect, decided that they would hear them, and " by God's help," do justice between them. What more could the parties reasonably require? If there was no error in the proceedings before the justice, and the Common Pleas notwithstanding reversed his judgment, the plaintiff had still his remedy by writ of error to the Supreme Court; and he could on that, assign for error any matter which properly furnished good reason why the judgment of the Common Pleas should be reversed, and that of the justice affirmed. He had therefore full and adequate remedy

by writ of error in case of a wrongful decision against him. But when the mandamus went in the case, commanding the Common Pleas to *quash* the certiorari, then unless the defendant brought a writ of error to the Court of Errors, the door of justice was closed to him forever.

The case of *The People, ex rel. Phelps* v. *Delaware Common Pleas*, is the case of an attempt to compel that court by mandamus, to vacate their order allowing costs ; on the ground that the recovery had been reduced, on appeal from a justice's judgment, more than $10, pursuant to the 2 R. S. 263, § 218. The motion was denied very properly, but without any question raised as to the jurisdiction by mandamus.

The case of *The People, ex rel. Fryer* v. *N. Y. Common Pleas*, was a case substantially of the same character, and with like result—on the ground that the Common Pleas were right ; not that the court had not jurisdiction.

But it is getting high time to look after these "gradual departures from the old law" of remedy by mandamus. The only other case that seems worthy of notice before the question came under review in the Court of Errors, in the *Oneida Common Pleas* v. *The People*, was the case of *The People* v. *The Superior Court of the City of N. Y.*, decided in October, 1837.